14 F.3d 597
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Merritt Avery JOHNSON, Defendant-Appellant.
 No. 93-5388.
 United States Court of Appeals, Fourth Circuit.
 Oct. 29, 1993.
Jan. 5, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-92-508-A)
 Joseph John McCarthy, Dawkins, Delaney, McCarthy & Sengel, P.C., Alexandria, VA, for appellant.
 Andrew Gerald McBride, Assistant United States Attorney, Office of the United States Attorney, Alexandria, VA, for appellee.
 Kenneth E. Melson, United States Attorney, Marcus J. Davis, Assistant United States Attorney, Office of the United States Attorney, Alexandria, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and HAMILTON, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Following a bench trial, defendant-appellant, Merritt Avery Johnson, was convicted of possession with intent to distribute cocaine base (crack), 21 U.S.C. Sec. 841(a)(1), and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C.Sec. 924(c)(1). Johnson was sentenced to 211 months' imprisonment, followed by three years of supervised release. Johnson appeals, asserting numerous assign-ments of error. Because we find that none of these assignments of error have merit, we affirm.
 
 
 2
 * Shortly after midnight on October 2, 1992, Fairfax County Police Officer James Cloud approached the scene of a narcotics arrest at the intersection of United States Highway No. 1 (Highway No. 1) and Beacon Hill Road in Fairfax County, Virginia. As Cloud approached the arrest scene travelling from the south on Highway No. 1, he observed Johnson sitting in an automobile (vehicle) stopped in the left-turn lane of southbound Highway No. 1, apparently waiting to turn onto Beacon Hill Road eastbound. Cloud continued north on Highway No. 1 to the next intersection where he turned around in order to return to the arrest scene.[1] When Cloud returned to the intersection of Beacon Hill Road and Highway No. 1, he observed that the vehicle Johnson was driving was still stopped in the left-turn lane on Highway No. 1. At this point, Cloud became suspicious that Johnson was observing the arrest scene and might have some connection to the individual being arrested. Cloud immediately pulled behind Johnson in the left-turn lane on Highway No. 1 and observed that the vehicle which Johnson was driving had a broken taillight, a violation of Va. Code Ann. Secs. 46.2-1003 and 46.2-1013. Cloud also observed that, although Johnson's vehicle was old, it bore a brand new "dealer's tag" from Maryland.
 
 
 3
 While waiting in the turn lane for the light to change, Cloud conducted a National Crime Information Center (NCIC) computer inquiry regarding the temporary dealer tag on Johnson's vehicle. Cloud received immediate notification that Johnson's tag was stolen. Cloud proceeded to follow Johnson onto Beacon Hill Road and followed him into a Seven-Eleven store parking lot. As Cloud entered the parking lot, he activated his emergency lights. Johnson parked in front of the store and his passenger, Antoine Jones, started to get out of the vehicle. Cloud got out of his car, ordered Jones to get back into the vehicle, and ordered Johnson back to his police car.
 
 
 4
 As Johnson approached Cloud, Johnson inquired why Cloud had effected the stop. Cloud advised Johnson that his temporary Maryland dealer tag was reported stolen. Johnson replied that he received the dealer tag from a friend in Maryland and that the paperwork on the registration was in the glove compartment of the vehicle. Cloud then instructed Johnson to sit in the back of his police car while he looked for the registration papers in the glove compartment of the vehicle. Cloud proceeded to search the glove compartment, but found no registration papers.[2] Cloud returned to his cruiser and placed Johnson under arrest for possession of stolen property.
 
 
 5
 A computer inquiry as to the owner of the vehicle based on the Vehicle Identification Number indicated that Robert Beal of Silver Spring, Maryland owned the vehicle. Because Johnson possessed no evidence that he was the owner of the vehicle, Cloud determined that the vehicle should be towed and impounded until the question of its ownership could be resolved. At this point, Cloud, along with Fairfax County Police Officer Gregory Bender, who had just arrived at the scene, searched[3] Johnson's car to inventory the contents of the car prior to towing and impoundment.[4] Under the driver's seat, Cloud discovered a white rock-like substance, later determined to be crack. After searching the interior of the vehicle, the officers obtained the keys from the ignition and opened and searched the trunk. In the trunk, they discovered a fully loaded, twelve-gauge shotgun.
 
 
 6
 Upon discovering the narcotics and the shotgun, Cloud returned to his police car and asked Johnson if everything in the vehicle belonged to him. Johnson replied, "yes." (J.A. 206). Cloud then asked Johnson if the shotgun in the trunk was his, and Johnson replied, "no." Id. Cloud then advised Johnson that he was under arrest for possession with intent to distribute crack as well as receiving stolen property. Johnson was then transported for processing to the Mount Vernon Station of the Fairfax County Police Department.
 
 
 7
 On December 2, 1992, a federal grand jury in the Eastern District of Virginia returned a two-count indictment against Johnson. Count one charged Johnson with possession with intent to distribute crack, 21 U.S.C. Sec. 841(a)(1). Count two charged Johnson with carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. Sec. 924(c)(1).
 
 
 8
 On December 30, 1992, Johnson moved to suppress, among other things, the items seized during the October 2 search. At the suppression hearing, Johnson contended that the items seized on October 2 should be suppressed because, among other things: (1) Cloud had no probable cause to conduct the initial search of the vehicle for registration papers; (2) Cloud lacked probable cause to arrest him; and (3) Cloud lacked probable cause to conduct the second search of the vehicle. The district court denied Johnson's motion to suppress.
 
 
 9
 After a bench trial, the district court found Johnson guilty on both counts. The district court sentenced Johnson to 151 months' imprisonment on Count one and 60 months' imprisonment, consecutive to Count one, on Count two.
 
 
 10
 Johnson appeals.
 
 II
 
 11
 Johnson challenges the constitutional validity of the two searches of his vehicle and his arrest. We shall address each of these arguments in turn.
 
 
 12
 * Johnson first contends that the initial search of the vehicle was constitutionally infirm because Cloud lacked probable cause to conduct the search. This argument has no merit.
 
 
 13
 All warrantless searches "are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) (footnote omitted)).[5] One such exception is"the so-called 'automobile exception.' " California v. Acevedo, 111 S.Ct.1982, 1984 (1991). Due to the inherent mobility of an automobile and the diminished expectation of privacy that is concomitant with the ownership of an automobile, United States v. Chadwick, 433 U.S. 1, 12 (1977), under this exception to the warrant requirement, the police may search a vehicle when "they have probable cause to believe contraband or evidence is contained [therein]." Acevedo, 111 S.Ct. at 1991.
 
 
 14
 In this case, it is clear that Cloud possessed probable cause to believe that evidence of criminal activity was contained in the glove compartment. The NCIC had confirmed that the dealer tag on the vehicle--which only authorized dealers are permitted to issue--was stolen. This information, coupled with the dealer tag's presence on an older vehicle and Johnson's explanation that he received the dealer tag from a friend, provided more than the necessary quantum to establish probable cause to search the glove compartment. Common sense tells us that the registration information was evidence of not only that the dealer tag was stolen, but that the vehicle was stolen as well.[6]
 
 B
 
 15
 Johnson also contends that Cloud lacked probable cause to arrest him. We disagree.
 
 
 16
 A public warrantless arrest is permissible provided the police have probable cause to believe a felony has been committed. United States v. McCraw, 920 F.2d 224, 227 (4th Cir.1990) (citing United States v. Watson, 423 U.S. 411 (1976)). Probable cause involves a practical common sense determination about whether, given all the circumstances present, it is reasonably probable to a prudent man that the suspect has "committed or was committing an offense." McCraw, 920 F.2d at 227 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Whether probable cause for Johnson's arrest existed is based upon the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230-31 (1983). A reviewing court is limited to examining those facts known at the time of the arrest in determining whether probable cause exists. McCraw, 920 F.2d at 227 (citations omitted). The standard of review applied in determining whether probable cause existed for Johnson's arrest is de novo. Id. However, the district court's factual findings will not be disturbed unless clearly erroneous. Id.
 
 
 17
 In the present case, the police knew that the dealer tag on the vehicle was stolen and that Johnson misrepresented that the documentation was in the glove compartment. With these facts in mind, we conclude that, at the time of the arrest, the police harbored "sufficient [information] to warrant a prudent man in believing that [Johnson] had committed or was committing an offense," McCraw, 920 F.2d at 227 (quoting Beck, 379 U.S. at 91), i.e., possession of stolen dealer tags and possession of a stolen vehicle. Thus, the police had probable cause to arrest Johnson.
 
 C
 
 18
 Johnson also challenges the search of his vehicle following his arrest. This argument similarly fails because it is clear that the search of the passenger compartment of the vehicle following Johnson's arrest was a valid search incident to a lawful arrest. New York v. Belton, 453 U.S. 454, 460 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of the arrest, search the passenger compartment of that automobile."). The search of the trunk that followed was fully justified because, having discovered what appeared to be crack in the passenger compartment of the vehicle, Cloud had probable cause to believe that the trunk also contained contraband. See Acevedo, 111 S.Ct. at 1991; United States v. McGuire, 957 F.2d 310, 314 (7th Cir.1992) (Once officer discovered that the defendant carried open, alcoholic liquor in the passenger compartment of his vehicle, officer had probable cause to believe that the trunk also contained contraband); United States v. Ross, 456 U.S. 798, 824-25 (1982) (scope of warrantless search of automobile includes area which would have been covered had a warrant been issued).[7]
 
 III
 
 19
 We find Johnson's remaining assignments of error to be without merit. Accordingly, for the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 The arrest scene was located on the east side of Highway No. 1, just south of Beacon Hill Road
 
 
 [2]
 We shall refer to the search of the glove compartment as the "initial search."
 
 
 [3]
 We shall refer to this search as the "search following the arrest."
 
 
 [4]
 There was no evidence entered below regarding the policy of the Fairfax County Police Department on inventory searches. We note, however, that the government asserts in its brief that the Fairfax County Police Department policy on inventory searches requires that an inventory search be performed prior to towing and impoundment. Appellee's Brief at 7 n. 2
 
 
 [5]
 The Fourth Amendment of the Constitution provides in part: "The right of the people to be secure in their persons, houses, papers, and effects against all unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...."
 
 
 [6]
 The search of the glove compartment was also justified on other grounds. Another exception to the warrant requirement is a search incident to a valid consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Johnson's invitation to Cloud to find exculpatory evidence in the glove compartment, demeanor, and responsiveness created consent to search the glove compartment
 
 
 [7]
 The government argues in the alternative that the search following the arrest was not constitutionally infirm because it was a valid inventory search. Inventory searches are an exception to the warrant requirement of the Fourth Amendment and serve the strong governmental interest of protecting an owner's property; protecting the police from danger; and insuring against false claims. Because an inventory search is an exception to the warrant requirement, the burden is on the government to demonstrate that the inventory search was permissible. See Sammons v. Taylor, 967 F.2d 1533, 1543 (11th Cir.1992); Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971); United States v. Jeffers, 342 U.S. 48, 51 (1951). Though probable cause is not a sine qua non to a valid inventory search, inventory searches must be reasonable and based upon standardized police procedures. Colorado v. Bertine, 479 U.S. 367, 37172 (1987); South Dakota v. Opperman, 428 U.S. 364, 372 (1976). While inventory searches are limited in scope to caretaking functions of cataloging the contents of a vehicle, Opperman, 428 U.S. at 375, a policy giving police some discretion does not violate the Fourth Amendment. Florida v. Wells, 110 S.Ct. 1632, 1634-35 (1990). Fruits of an inventory search may be suppressed if the officers acted in bad faith--in an attempt to discover evidence of criminal wrongdoing--or if the officer's discretion was not circumscribed by official standardized procedures. Id.; Bertine, 479 U.S. at 374-76. An officer's expectation of uncovering evidence will not vitiate an otherwise valid inventory search. United States v. Gallo, 927 F.2d 815, 819-20 (5th Cir.1991); United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir.1990); United States v. Frank, 864 F.2d 992, 1001 (3d Cir.1988), cert. denied, 490 U.S. 1095 (1989)
 The record before us does not reflect that any evidence was ever entered below regarding the policy of the Fairfax County Police Department on inventory searches. Consequently, without this evidence in the record, the search after the arrest cannot be considered a valid inventory search. Bertine, 479 U.S. at 371-72; Opperman, 428 U.S. at 372.